# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KOFFI AMEYAPOH, #A076-130-849, | * | |
| Petitioner | * | |
| v. | * | Civil Action No. JKB-17-509 |
| WARDEN GARRY L. MUMFORD | * | |
| Respondent | * | |

## MEMORANDUM

Petitioner Koffi Ameyapoh, a citizen of Togo, filed this habeas action pursuant to 28 U.S.C. § 2241, challenging his detention in immigration custody pending completion of proceedings seeking his removal from this country. Ameyapoh seeks immediate release and argues the length of his detention surpasses the presumptively reasonable period of time for detention pending removal under *Demore v. Kim*, 538 U.S. 510 (2003).[1] ECF 1.

Respondent, the Warden of the Worcester County Detention Center, through counsel, argues that Ameyapoh has received all the due process and relief to which he is entitled, and seeks dismissal of the petition as moot, noting that Ameyapoh is now subject to a final order of detention and that his post-removal order detention is reasonable. ECF 4 & 12. Ameyapoh has filed an opposition response to the motion (ECF 15),[2] and respondent has filed a reply. ECF 20. A hearing is not needed to resolve the case. *See* Loc. Rule 105.6 (D. Md. 2016). For reasons stated herein, the petition shall be DENIED and DISMISSED.[3]

---

[1] As discussed more fully below, Ameyapoh's order of removal has now become final.

[2] The Court is also in receipt of what has been docketed as Ameyapoh's Supplemental Petition (ECF 23), but which is in fact a Supplemental Petition for Reconsideration directed to the Board of Immigration Appeals.

[3] Ameyapoh has also filed a Motion to Stay the Order of Removal (ECF 8), which shall be denied as this court lacks jurisdiction to consider claims related to the decision to execute a removal order. ECF 9.

**Background**

The following facts are uncontested. Ameyapoh is a native and citizen of Togo. He entered the United States on August 29, 1994, as a student F-1 visitor. ECF 1, p. 8; ECF 1-1, pp. 3, 11. On November 14, 2000, after marriage to a United States citizen, he adjusted his status to conditional permanent resident status. *Id*. Ameyapoh's spouse withdrew the petition, and on June 9, 2004, Ameyapoh's status was terminated. ECF 1-1, pp. 3, 11 & 12. Ameyapoh and his wife divorced in January of 2005. ECF 1, p. 8.

Petitioner was convicted in the Circuit Court for Montgomery County, Maryland, in 2006 of sexual abuse of a minor, two counts of second-degree rape, and four counts of third-degree sexual offense. ECF 1, p. 8, ECF 1-1, pp. 11-12. He was sentenced to 15 years' incarceration. *Id*. His appeal of the criminal convictions was denied. ECF 1, p. 8.

On March 13, 2007, based upon these convictions, the Department of Homeland Security (DHS) charged Ameyapoh with removability pursuant to the Immigration and Nationality Act (INA) § 237(a)(2)(A)(iii), § 237(a)(1)(D)(i), and § 237(a)(2)(A)(ii). ECF 1, p. 8, ECF 1-1, p. 3.

During his removal hearing before the immigration court, on February 17, 2010, Ameyapoh admitted he was removable under INA § 237(a)(2)(A)(iii) for his convictions relating to rape or sexual abuse of a minor but denied removability under the other two INA provisions. ECF 1-1, p. 12. The immigration court found Ameyapoh removable under INA § 237(a)(2)(A)(iii). *Id*.

Subsequently, Ameyapoh successfully petitioned for post-conviction relief in the Circuit Court for Montgomery County and his convictions were vacated. *Id*.; ECF 1, p. 9. As a result of the vacating of Ameyapoh's convictions, the Board of Immigration Appeals (BIA) remanded the case to the immigration court, noting that the immigration court had not addressed DHS's charge

that Ameyapoh was removable under § 237(a)(1)(D)(i) due to termination of his lawful permanent resident status on a conditional basis and that such a charge, if sustained, would independently establish removability. ECF 4-1, p. 1.

Ameyapoh was retried in the Circuit Court for Montgomery County on July 16, 2014. He was found guilty of the same charges, and sentenced to a fifteen- year term of confinement. ECF 1, p. 9; ECF 1-1, pp. 5-6, 9, 12-13.

On June 10, 2016, based on these convictions, DHS took Ameyapoh from state custody into ICE custody. ECF 1, p. 10; ECF 1-1, p. 10. On July 5, 2016, DHS charged Ameyapoh with removability pursuant to INA § 237(a)(2)(A)(iii) (for being convicted of aggravated felonies); § 237(A)(1)(D)(i) (for his conditional permanent resident status having been terminated); and § 237(A)(2)(E)(i) (for being an alien who after admission was convicted of a crime of domestic violence, stalking, or a crime of child abuse, child neglect, or child abandonment). ECF 1-1, pp. 12-13.

At a hearing before the immigration court, Ameyapoh admitted to his criminal convictions and to his removability under § 237(a)(2)(A)(iii), § 237(A)(1)(D)(i), and § 237(a)(2)(A)(ii) (for having been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal conduct). *Id*., p. 13. He denied his removability under § 237(a)(2)(E)(i), but the immigration court determined he was removable under this statute as well. *Id*.

Ameyapoh's request for deferral of removal under the Convention Against Torture (CAT) was denied by the immigration court on November 29, 2016, after the court found that Ameyapoh's testimony claiming he was gay was not credible. The court determined that

3

Ameyapoh was not likely to be tortured if he returned to Togo and that no other evidence supported relief under CAT. *Id.*, pp. 14-23.

On appeal to the BIA, Ameyapoh argued that he could not be removed because his criminal convictions were not final and because he intended to file a belated appeal of his state criminal convictions. *Id.*, pp. 5-7. On May 22, 2017, the BIA affirmed the immigration court's removal order, dismissed Ameyapoh's appeal, and ordered his removal to Togo. ECF 8-1, p. 5.

Administrative review of a removal order becomes final either (1) upon a determination by the BIA affirming the IJ's order of removal, or (2) after expiration of the period during which the alien is permitted to seek review of an order of removal by the BIA. *See* 8 U.S.C. § 1101(a)(47)(B). The immigration court's removal order became final on May 22, 2017. ECF 9.[4]

Thereafter, ICE obtained travel documents permitting Ameyapoh's removal to Togo. ECF 12-2, p. 6. His removal was scheduled via commercial airline for August 7, 2017. *Id.* Ameyapoh refused, however, to comply with his removal. *Id.* As he exited the vehicle in the parking garage at the airport he advised ICE deportation officers that he was "not going back to Togo. You will be shipping a dead body back to Togo." *Id.* He also stated that he was "going to make a commotion at the terminal, so the Marshals can shoot me because I would rather die than to go back to Togo." *Id.* Ameyapoh was returned to the vehicle. *Id.*

A second attempt to escort Ameyapoh to the terminal was undertaken but he again refused to go and attempted to throw himself over the fourth floor railing in the parking garage. *Id.* The deportation officers stopped Ameyapoh before he could harm himself and again placed him back in the car.

---

[4] On June 15, 2017, Ameyapoh filed an appeal of the BIA Decision to the Fourth Circuit Court of Appeals. ECF 12-1; ECF 10.

The deportation officer then requested assistance from the United States Custom and Border Patrol (CBP) to remove Ameyapoh. Two CBP officers joined the ICE officer and escorted Ameyapoh to the terminal. *Id.* While walking to the deferred inspection area, Ameyapoh threw himself on the floor twice, while wearing full restraints. *Id*. A third CBP officer arrived to assist in the removal and Ameyapoh threw himself onto the floor again. Additional CBP officers arrived and placed Ameyapoh in a cell. Two ICE officers went to the Ethiopian Airline counter and obtained Ameyapoh's ticket and checked his bag. A CBP officer advised the ICE officer that while placing Ameyapoh in a cell two CBP officers sustained injuries necessitating one of the officers being rushed to the hospital. *Id*. Ameyapoh's escort to the plane was cancelled. Four officers escorted him back to the car and he was returned to ICE custody. *Id*.

**Analysis**

Insofar as Ameyapoh is raising a constitutional challenge to his continued pre-removal order of detention, the court shall summarily dismiss the action. Before a final decision was rendered on Ameyapoh's removal, his detention was governed by 8 U.S.C. § 1226, which applies to an alien whose removal is sought but not yet determined. Under § 1226(e), such discretionary determinations are not subject to federal judicial review. *See* 8 U.S.C. § 1226(e); *Hyacinthe v. U.S. Attorney General*, 215 F. App'x 856, 862 n.7 (11th Cir. 2007) (holding that the court lacks jurisdiction to review plaintiff's claims regarding the immigration judge's denial of bond).

At the time Ameyapoh filed this petition he was held in mandatory immigration detention under 8 U.S.C. § 1226(c) due to his convictions for rape and sexual abuse. He alleged that his mandatory detention should be limited to six months, and he sought a bond hearing and/or

immediate release. ECF 1, pp. 7 & 12. Once his removal became final, his petition as originally filed became moot, as his detention is now governed by 8 U.S.C. § 1231.

Now that Ameyapoh is subject to a final order of removal, his detention pending removal is governed by 8 U.S.C. § 1231. After the removal order becomes final, ICE must detain the alien until removal for up to ninety days (the "removal period"). *See* 8 U.S.C. § 1231(a)(2). The decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001), governs whether an alien's detention pending removal is constitutional. In *Zadvydas*, the Supreme Court held that post-removal-order detention under 8 U.S.C. § 1231(a) is implicitly limited to a period reasonably necessary to bring about the alien's removal from the United States and does not permit indefinite detention. In sum, the Court found that after an order of deportation became final, an alien may be held for a six-month period. After this period,

> [o]nce the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Zadvydas*, 533 U.S. at 701. The purpose of detaining a deportable alien is to insure his presence at the moment of removal. *See id*. at 697-99. In cases where it is unlikely that removal will occur, detention of the alien no longer serves this purpose. *See Clark v. Martinez*, 543 U.S. 371, 384 (2005) (where repatriation negotiations for removal of inadmissible aliens to Cuba had ceased, removal was not reasonably foreseeable).

6

The *Zadvydas* six-month, presumptively reasonable period, and the post-removal 90-day period, are subject to a statutory exception: "[t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien . . . acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C); *see also Dinh v. McCormick*, Civ. No. WMN–12–2275, 2013 WL 141575, *2 (D. Md. Jan. 10, 2013) ("six-month presumptively reasonable removal period was tolled" where petitioner "was presented with, but repeatedly refused to complete, the form necessary to begin the process of obtaining travel documents for Vietnam"); *Diallo v. Pereira*, Civ. No. AW–07–348, 2007 WL 5230798, *3 (D. Md. June 29, 2007) (applicable periods "are tolled" when "an alien fails to cooperate with the Department of Homeland Security or otherwise impedes his removal").

Ameyapoh has failed to meet his burden of proof in that he has offered no evidence that his removal is not significantly likely in the reasonably foreseeable future. To the contrary, Respondent's recent filings with the court, evidencing that necessary travel documents have been received and that Ameyapoh's deportation to Togo would have already occurred had it not been for Ameyapoh's obstruction of same, refute any such contention and render Ameyapoh's habeas challenge to his post-order detention under *Zadvydas* moot. Any delay in Ameyapoh's removal has been occasioned by his own conduct.

A separate Order follows.

Dated this 7th day of November, 2017 .

FOR THE COURT:

_____/s/_____
James K. Bredar
Chief Judge